WANZER, appellee, *vs.* BLANCHARD & BUCKLAND.

A deed by the trustee of a village Company, conveying "all lands of said Company not designated and numbered by lots on the plat of the Company's purchase," held not to convey a street on said plat, which by *non user* had reverted to the Company.

The purchaser of an equity of redemption of Mortgaged premises having gone into possession under such purchase, is estopped upon foreclosure of the Mortgage, from claiming adverse title in himself, *a fortiori* from setting up adverse title in a stranger.

Appeal by Buckland from Oakland Circuit, in Chancery.

The bill in this cause was filed to foreclose a mortgage executed by Blanchard to G. O. Whittemore, upon "all that piece of land lying between Pontiac village lots 22 and 23, being part of Warren street as designated on the plat of said village," &c., to secure the payment of two promissory notes. The notes and mortgage were executed on the 4th April, 1844, and the mortgage recorded same day. The bill alleges that about the 6th of December, 1847, Blanchard conveyed to defendant, Buckland, by deed, the premises in question, and delivered possession thereof in pursuance of said deed to Buckland, who then took possession thereof, and has ever since been in such possession: that on the 1st day of July, 1850, Whittemore assigned said notes and mortgage to complainant. The bill further alleges that the property in question "was long previous to the execution of said mortgage discontinued as a street." The bill was taken as confessed against Blanchard, but Buckland answered, leaving complainant to prove the mortgage and assignment. The answer admits that said parcel of land was long previous to the execution of the mortgage discontinued as a street: that by quit claim deed of the date mentioned in the bill, Blanchard transferred possession of said land to Buckland, and admits that he is now in possession thereof, denies that Blanchard ever had any title to such land, but claims that he took possession thereof under cover of a pretended quit claim deed "from one William S. Henderson, the President of the village of Pontiac," bearing date April 4th, 1844, and insists that neither Henderson nor the corporate authorities of said village ever had any title, interest, or equity, in or to, or possession of said land, nor right to convey the same. The answer claims that the defendant, Buckland, is the owner in fee simple of the land in question, by purchase from Elon Farnsworth, and insists that the mortgage is no lien or incumbrance thereon, and of no force or validity as against Buckland or his title. To maintain this, the answer alleges that the mortgaged premises are

a portion of certain lands purchased from the United States by one Stephen Mack, about the year 1820, as Trustee for the Pontiac Company; that in 1826 Mack died, and Farnsworth succeeded him as Trustee; that the land in question had never been conveyed by Mack, but accrued to Farnsworth, who conveyed the same to Buckland about the 18th July, 1830, and claims that Buckland now, in virtue of such conveyance from Farnsworth, holds the same "independent of and without being in anywise encumbered by said mortgage." The answer further insists that "*though the said parcel of land was for a short time used as a public street, yet it never was such in fact, and never was established as a street.*" The proofs in the case consist entirely of a stipulation and exhibits. The facts set up in the bill respecting the execution and assignment and their record are admitted, and that nothing has been paid on the notes and mortgage. It is also admitted that the premises are a portion of the purchase of Mack, and that Farnsworth succeeded him as Trustee, and as such had power to sell the lands of the Company. The pleadings and proof establish the further facts that there was a plat of said village, which was recorded in 1830, of which Warren street was a part. That in the year 1832, Farnsworth, as Trustee, conveyed by quit claim to one Daniel Le-Roy, "all lands of said Company not designated and numbered by lots, on the plat of the Company's purchase, and not sold," &c., and that in the year 1833, LeRoy conveyed to Whittemore, the mortgagee in the mortgage before the Court, "all his right, title, and interest of in and to the village of Pontiac, meaning all pieces or parcels of lands not numbered on the plat of said village or sold," &c. That in 1844 the President of the village of Pontiac conveyed by quit claim the mortgaged premises to Blanchard, the mortgagor, which was duly recorded, and that Whittemore witnessed said deed and took the acknowledgment of its execution as associate Judge of the Oakland Circuit Court, and that on the 18th of July,

1830, Farnsworth as trustee, quit claimed the premises in question to the defendant, Buckland. The answer admits the quit claim from Blanchard to Buckland in 1847, and his possession. No evidence was exhibited showing how long the premises in question were used as a street, nor when or how they were discontinued as a street, and the case is entirely silent as to the time and manner of its dedication, and when it was used as a street, except what appears in the answer of the defendant, Buckland.

*M. L. Drake*, for appellant, presented and argued the following points:

1. The constituted authorities of Pontiac village having discontinued the street, the premises reverted to the Pontiac Company, and its trustee could then dispose of them. Consequently by a deed of Farnsworth, Buckland acquired the ownership of the land. (*Bacon Abrg. Tit. Highway*, B.)

2. Whittemore acquired no title to the premises in virtue of the deed from Farnsworth to LeRoy and from LeRoy to him. The premises were designated on the plat of the village as "Warren street." The conveyance to LeRoy was of all lands not "*designated* and numbered."

3. Buckland having acquired the title to the premises by the deed from Farnsworth, may set up title in himself to defeat the complainant's mortgage. And he is not estopped by the quit claim deed to him from Blanchard. (*Blanchard* vs. *Brooks*, 12 *Pick.* 47; *Flagg* vs. *Mann*, 14, *Ib.* 4; *Blights, lessee,* vs. *Rochester*, 7 *Wheat.* 535; 5*th Cond. Reports,* 335; *Shep. Touch.* 53; *Co. Lit.* 363; *Ib.* § 693; *Com. Dig. Estoppel* [*E.* 3] *citing* 1 *Rol.* 862, 2 *Ib.* 35; *Tooley* vs. *Dibble*, 2 *Hill,* 641; *Jackson* vs. *Walker,* 7 *Cow.* 637; *Jackson* vs. *Harper,* 5 *Wend.* 246.)

*R. Manning,* for appellee, presented and argued the following points:

1. Buckland having taken possession of the mortgaged premises by virtue of a quit claim deed from Blanchard,

with knowledge of the mortgage, the record thereof being notice to him, is estopped from denying Blanchard's title. (*Jackson* vs. *Ayres*, 14 *John. Rep.* 224; *Jackson* vs. *Walker*, 7 *Cow.* 637; *Jackson* vs. *De Walts*, 7 *John. Rep.* 157; *Jackson* vs. *Harper*, 5 *Wend.* 246; *Bowne* vs. *Potter*, 17 *Ib.* 164; *May* vs. *Tillman*, 1 *Mich. R.* 262.)

2. If the defendant is not estopped denying the title of Blanchard, his grantor, he has failed showing title in himself. The title, if not in Blanchard when he released, was in Whittemore, the mortgagee and assignee of complainant.

3. As Buckland went into possession under Blanchard, he cannot set up title in a third person to defeat the mortgage. (*The Eagle Fire Co.* vs. *Lent and others*, 6 *Paige*, 635.)

By the Court, MARTIN, J.

If Buckland has any title to the mortgaged premises, he acquired it through the deed from Blanchard. When the village of Pontiac was laid out and allotted we are not advised, but we are informed by the stipulation in the case, that a plat of the village was recorded in the year 1830. Under the law as it then existed, such record, if the plat in other respects conformed to the requirements of the statute, operated to vest in the county of Oakland the fee of all the lands appropriated for streets and other public uses, in trust for the uses and purposes intended, and for no other purpose. Under the allegation in the bill and the admission in the answer, that the discontinuance of the use of the premises as a street was a long time before the execution of the mortgage, and under the claim of defendant, Buckland, in his answer, that although *used* for a short time, it in fact was never a street, and was never established as such, and in the absence of all proof upon this point, we are bound to presume, under a defence like the present, every thing against the title which is attempted to be set up adversely to the mortgage, and to hold the defendant to strict proof of his legal and equitable rights.

At the common law, when the owner of land has laid it out into village lots, intersected with roads and public squares, such roads and squares are dedicated to the public use. But it is not the fee of the land which passes in such cases; the public have only an easement in the land, the fee itself for all other purposes remains in the owner. See 22 Wend. 435.

Our statute was designed, as remarked by the Court in the case of The People *vs.* Beaubien, 2 Doug. 259, 270, to provide an explicit mode of dedication, and to render certain the rights of purchasers and the public in the grounds thus dedicated, and it obviates the difficulty met with in some of the cases in the application of the common law principle of dedication in regard to the ownership of the fee, by providing that upon compliance with the requirements of the statutes, this should vest in the county, in trust for the designed use. If then the plat was duly executed, acknowledged and recorded, before the discontinuance of this portion of Warren street, the title having become vested in the county thereby, remains there still, unless such discontinuance operated to revest the fee in the original proprietor, or his grantee—in other words, unless the property reverted; while if it be true, as claimed and insisted by the defendant, Buckland, in his answer, that though the property was for a short time used for a street, yet it never was such in fact, and never was established as such, we cannot infer that the fee was ever in the county. The claim of the defendant is inconsistent with such idea, or with any other, except that the dedication was by user alone and not by grant, in which case, the discontinuance operated to restore to the proprietor or his grantee all his original rights over the property.

Assuming such to be the fact, the question arises—to whom did it revert? Upon this question the evidence is entirely silent. In 1832, however, it appears that the trustee of the Pontiac association conveyed to LeRoy all lands of the company not designated and numbered by lots upon the plat of the

Company's purchase, and not sold, &c. This deed appears upon its face to have been designed to convey to Le Roy all the vacant grounds in Pontiac. To the title of Le Roy, Whittemore succeeded by conveyance executed in 1833. Now if the title did not vest in the county, it must necessarily follow that it passed to Le Roy, and from him to Whittemore—for Farnsworth reserved nothing from sale except the allotted grounds, and such other as had been sold or contracted—and the premises in question would fall within neither description.

But it is contended that this property was not embraced in the deed to Le Roy, as it was a street and designated as such, and that the deed reserved lands "designated" as well as lands "numbered by lots."

But the language of the deed will not bear this construction. The words are, "designated and numbered *by lots*," the fact of allotment being the test of the exception. But admitting the other to be the true construction, still there is no evidence that the premises were ever "designated" as a street—while on the contrary, the defendant, Buckland, insists that such is not the fact. By this he must abide.

Buckland bases his own claim of title upon a deed from Farnsworth, executed in 1850—and based Farnsworth's right to convey, upon the fact of no dedication but by user, and of reversion of such use by discontinuance. If it reverted to Farnsworth, it must have been before the deed to Le Roy, and before the record of the plat, or the claim of the defendant himself, as set up in the answer, would be false—for if the plat had been duly recorded, and Warren street was a part, then the property had been "*established*" as a street.

This view of the case renders it unnecessary for us to enquire into the effect of such discontinuance were the fee in the county, or to its effect upon the rights or title of purchasers of lots bounded upon these premises in such case. In no aspect in which the case can be viewed, can we discern

3

that any thing was acquired by the defendant, Buckland, through the deed of Farnsworth.

It becomes unnecessary, also, to inquire into the right of Henderson to convey, and into the title which Blanchard acquired through that deed, or into the effect of Whittemore's acts in respect to such title.

Buckland having purchased from Blanchard the equity redemption of the mortgaged premises, and gone into possession under such purchase, is estopped to deny the title of the mortgagor upon proceedings to foreclose, even when he insists upon adverse title in himself; much more is he estopped from setting up title in a stranger.

Had this objection been made upon the hearing, or by proper preliminary proceedings, it must have been regarded as valid. How such questions can be litigated in this Court, in proceedings to foreclose the mortgage, under any form of pleadings, but more especially under pleadings like the present, is beyond our comprehension.

The complainant has a right to foreclose upon the title of the mortgagor, and those claiming under him. What title may be acquired under such foreclosure, is a question to be solved by proceedings instituted in another form.

The decree of the Circuit Court, for the county of Oakland, must be affirmed.