## James Watson v. William Peters.

*City lot : Navigable stream : Riparian rights : Platting lands.* The grant of a city lot bounded on a navigable stream, with the water as a boundary, in the absence of any express reservation, conveys to the grantee the land under the water to the center of the stream; and the fact that the grantor before conveying, platted the lands into lots and blocks, with distinct lines and distances marking the boundaries of each lot, and with the water boundary of the river lots indicated by a line representing the shore line, and conveyed by such plat, will not limit the grant to such shore line, or operate to reserve to him proprietary rights in front of the lots conveyed.

*Riparian rights : City lots.* The privileges and conveniences which appertain to the shore of navigable streams, constitute a part, and often the principal part, of the value of the grant, and this is especially true of city lots, and therefore the reason of the rule which infers an intent to convey the land under the water is, in the case of such lots, most apparent and forcible.

*Navigable stream : Island : Riparian rights.* Whether in case of an island in the navigable stream the riparian rights will extend beyond the center of that portion of the stream between the island and the land conveyed :—*Quære ?*

*Riparian rights : Sand bar.* But such riparian rights will not be affected or limited by a mere sand bar or place of shallow water, exposed only when the wind is favorable or the water low.

*Deed : Record : Attestation.* The record of a deed which was executed by two grantors, and acknowledged by them at different dates several months apart, and at different places a considerable distance apart, and which purports to be witnessed by two witnesses generally, one of whom, and whose name appears second in order, took the first acknowledgment, and also by a third witness as to the signature of the grantor signing last, was held *prima facie* evidence of due execution and attestation under our statutes requiring two subscribing witnesses.

*Acknowledgment : Execution : Date : Attestation : Presumption.* The date of the acknowledgment of a deed, in the absence of proof, raises no presumption that the signing was at the same time and not prior, so as to affect the validity of the attestation of one who has subscribed as a witness generally.

*Deed : Attestation : Evidence.* Proof that neither of two subscribing witnesses were present at the acknowledgment of a deed, in the absence of any showing that it had not been signed previously, does not warrant an inference against the validity of their attestation of the deed.

Whether it is competent to receive evidence that persons whose names are subscribed as attesting witnesses to a deed, were not present at the signing, for the purpose of overthrowing a record apparently valid, and against one who has purchased in reliance upon it:—*Quære ?*

*Heard January 13 and 14. Decided April 9.*

Error to Bay Circuit.

*Maxwell & Hyde,* for plaintiff in error.

*Henry H. Swan, A. B. Maynard* and *C. I. Walker,* for defendant in error.

COOLEY, J.

This is an action of ejectment, brought to recover premises described as " that part of a piece of land formerly called Sand Island, lying in the Saginaw river, being part of fraction number three, of section twenty-eight, in township fourteen north, of range five east, being that part of said Sand Island lying between the south line of the John Riley reservation, in said township fourteen north, of range five east, and the line between lots two and three, of block

number two, on the plat of Portsmouth, in common use, as extended westward to the main channel of the Saginaw river." The defendant was in possession of block one, and of lots one and two, on block two, on said plat of Portsmouth, claiming title thereto through conveyances from the original proprietors, and the land demanded lies between the lots so possessed by him and the main channel of the Saginaw river. By the plat the blocks mentioned front on the river and the westerly line of the blocks on the plat is drawn along the shore line of the river. Water street bounds these blocks on the east. The plaintiff claims what is called in his declaration Sand Island, under conveyances from the original proprietors, made, as the defendant claims, after they had conveyed blocks one and two aforesaid. The deed to the plaintiff is of all of said fraction three lying west of Water street; and this he supposes gives him all between Water street and the main channel of the river, not previously conveyed.

From the evidence it appears that the original plat shows a middle ground in front of these blocks, without particularly designating its nature, or showing any definite purpose of the proprietors in respect thereto. The water between this middle ground and the east shore was navigable to a point above blocks one and two. What further appears in regard to the middle ground, we copy from the record: " There was evidence introduced by the defendant, tending to show that the middle ground, called Sand Island, was nearly always under water, usually covered with the waters of Saginaw river, except when the south wind blew; and evidence was introduced by the plaintiff, tending to show that some parts of the said island were formerly always above water, and that it was only entirely submerged during heavy north winds, and during the spring freshets.

"But it also appeared from the testimony, that all the land described in the declaration in this cause, had always been covered by the waters of said river, to the depth of from one to three feet, excepting only at times when the waters of said river were moved by heavy winds toward the Saginaw Bay, and thereby reduced below their ordinary depth, and then only at low stages of water in said river.

"The defendant further proved on said trial, that the parties under whom he claims title to said block one, and lots one and two, in said block two, and who claimed title thereto under said deed from Williams and Howard, to said Marsac, and other mesne conveyances, took possession of that part thereof lying east of the center of said bayou, in the fall of 1853, and commenced the erection of a steam saw mill thereon; and that the said defendant, and those under whom he claims title, have ever since occupied said block and lots under such claim of title, and also claiming as riparian proprietors to the thread of said Saginaw river in front thereof.

"The defendant also introduced evidence tending to show that the parties so claiming title, have ever since the date last aforesaid, used and occupied said middle ground for booming logs, and for lumber docks, etc.; and the said plaintiff introduced evidence tending to show that said occupancy of said middle ground, did not commence until within the last twelve or fourteen years.

"It further appeared in evidence, that the Saginaw river at the point aforesaid, and above and below the same, is several hundred feet in width, and navigable for vessels drawing at least twelve feet of water, and that the main channel thereof is west of the said middle ground, and that the water in the bayou, so called, is shallow at the upper or south end thereof, and has never been navigable for boats or vessels at that point, drawing more than three feet of

water, and is sometimes nearly dry; and also, that all navigation of said bayou is now prevented by the filling up of the same between the bank of said river and said middle ground in several places below as well as above the premises of said defendant, and the said filling up has taken place within the last ten or twelve years; but that formerly, and until within the last ten or twelve years, the said bayou was navigable for large vessels, to a point above the lands described in the declaration in this cause."

The circuit judge charged the jury that, "the owner of a lot in this plat, bounded on the stream, has the same ownership as that of the owner as grantee in a deed bounded by the river outside the plat;" in other words, that he owned to the main channel of the river, and consequently the plaintiff could not recover.

This charge presents the main point in the case, though one other is necessary to be considered, as it involves the record of a deed under which the defendant claimed, and which was essential to proof of his title. The record purported to be of a deed from Henry Howard and Gardiner D. Williams to Joseph F. Marsac, and the question raised upon it was, whether the deed was sufficiently witnessed to entitle it to record. The statute required an attestation by two witnesses. By the record the deed would seem to be duly signed, and it was attested as follows:

"Signed, sealed, and delivered, in presence of

"K. PRITCHETTE.

"D. E. HARBAUGH.

"E. N. D'AVENPORT, witness to G. D. WILLIAMS' signature."

Then followed a certificate of acknowledgment by Henry Howard before D. E. Harbaugh, as justice of the peace of Wayne county, and by G. D. Williams before Thomas Simpson, a notary public of Saginaw county. The first mentioned certificate is dated several months before the other.

Upon the face of this record there is certainly nothing to indicate that the deed was not duly attested. The attestation by Pritchette and Harbaugh is apparently to an execution by both the grantors, and nothing on the face of the papers indicates the contrary, unless it be the fact that Harbaugh took the acknowledgment of one and not of the other. This fact is certainly a little remarkable if he witnessed the execution by both, before either acknowledgment had been taken; and the inference that he attested the execution by one only, is very forcible. But there is no such inference from the face of the papers as to Pritchette, unless the fact of his name appearing above Harbaugh's can be regarded as evidence that he must have signed first, and consequently could not have attested Williams' signature, who appears to have acknowledged, and may therefore be presumed to have executed the deed afterwards. But the date of the acknowledgment of the deed is not very satisfactory evidence of the time of signing, and there is nothing here to show that this deed may not have been signed by both, and witnessed by Pritchette, anterior to the time of acknowledgment by either. If this were so, then, as Davenport attests the execution by the grantor whose acknowledgment Harbaugh did not take, the deed would be duly and sufficiently witnessed as to both. But whether this were in fact so or not, it is clear that *prima facie* the record shows a due execution.

The plaintiff called Marsac, the grantee in the deed, to prove that it was executed by Williams in Saginaw, and that neither Pritchette nor Harbaugh was there. His evidence showed the acknowledgment by Williams in Saginaw, but it did not show but that he might have executed it previously in Detroit, where he frequently had occasion to be, as member of the state board of internal improvement. After this evidence had been taken, the judge ordered it stricken

26 mich.—65.

out.    We think it so vague, indefinite and uncertain, that
the jury would not have been warranted in finding against
the deed upon it, and therefore that the action of the court
was proper.    And we do not discuss the question whether
it would be competent to receive such evidence, in order
to overthrow a record apparently valid, and in reliance upon
which a party has become purchaser.

Some questions are made regarding conveyances in the
plaintiff's chain of title, but these are not material unless
Howard and Williams had private rights of ownership in
front of blocks one and two; which they could alienate to
others, after their conveyance to Marsac.    The plaintiff
insists that they had such rights; and he must support this
position or he cannot recover.

The plaintiff does not dispute that, in general, the grant
of lands bounded upon a stream of water, will convey to
the grantee 'the land under the water to the center of
the stream.    This, however, he insists, is not such a case.
Howard and Williams make a plat of their lands, upon
which they mark off blocks and lots, and in each case draw
distinct lines to indicate the boundaries.    The lots and
blocks embrace the land within these lines, and no more.
When, therefore, the conveyance is made of a block or lot,
nothing is conveyed which is outside these definite bound-
aries, any more than it would be, if in the conveyance, the
lines were specifically described by stakes, courses, distances,
and quantities.    This is, in effect, such a conveyance; for
in platting, stakes are driven, courses are run, distances and
quantities ascertained, and the plat made, is but a reduced
representation of the surface, and it indicates by a scale,
and by references to monuments, the location, shape, and
size of every parcel of land marked upon it.    And the stat-
ute upon the subject of such plats, requires this particu-
larity, before the instrument can be made matter of record.

Such is the position of the plaintiff; and we are referred to several authorities which are thought to support it. Of these, *Llewellyn v. The Earl of Jersey, 11 M. & W., 183,* is not in point, as that merely decides that where boundaries are given in a deed, either directly, or by reference to a plan, such boundaries will control an erroneous statement of quantity, and parol evidence cannot be received to extend the grant and make it embrace the quantity mentioned. *Barton v. Dawes, 10 Com. B., 261,* was also a case where the court held parol evidence inadmissible to bring within a grant lands which, under the well understood rules of construction, were not embraced by it. *Webb v. Portland Manuf. Co., 3 Sum., 189,* was a case of diversion of water from a riparian proprietor, and no question was involved at all analogous to that before us. *Hunter v. Middleton, 13 Ill., 50,* is also not in point; the question involved being simply, what rights the proprietor of a town plat has in the streets laid down thereon, when the statute declares that the fee in such streets shall vest in the town corporation. There is no statute of this state which gives any particular effect to the marking upon such a plat, of the water courses that may be upon the land. *Moses v. Pittsburgh, etc., R. R. Co., 21 Ill., 516,* is no nearer the case before us; and the same may be said of *Milburn v. Cedar Rapids, 12 Iowa, 246,* and *Wanzer v. Blanchard, 3 Mich., 11.*

The case of *Child v. Starr, 4 Hill, 369,* however, has some bearing. There a mill lot on the Genesee river, at Rochester, had been conveyed by metes and bounds, one boundary "running eastwardly to the Genesee river; thence northwardly along the shore of said river to Buffalo street," etc. The question was, whether this conveyance gave the grantee the land under the water to the middle of the stream. A majority of the court of errors, overruling a majority of the supreme court, held that it did not. On

examination of the case it will be perceived, that the decision proceeds upon the assumption, that *prima facie* the riparian proprietor, whether of a city lot or any other lands, owns the bed of the river adjoining his land to the middle or thread of the stream; but it is held that this presumption may be overcome by words employed in the conveyance, which show clearly an intent on the part of the grantor, to exclude from the grant the land under water. That the grantor may thus exclude the bed of the stream from the grant, we suppose will scarcely be questioned. Whether the principle was correctly applied in the particular case, was a question upon which the two courts, collectively considered, were equally divided, and we have no occasion to discuss it. It was a question upon the construction of the particular instrument, and the point was, whether the grantor, by the words employed, had affirmatively and clearly excluded the land under the water from his grant. Applying that principle to this case, the defendant must be held proprietor to the middle of the main channel, unless the plat clearly overcomes and excludes the presumption of the common law which would make him such.

The case of *Trustees of Illinois and Michigan Canal v. Haven, 11 Ill., 554,* cited by the plaintiff, is in point, and directly against his position. In that case, certain parties were owners of town lots on both sides of the Des Plaines river. The lots were designated by numbers, and would seem to have been platted, as in this case. On one side the river they extended to the bank, but on the other side a street was laid out along the margin of the river and between it and the lots. The proceeding was for an assessment of damages occasioned by diversion of the stream, and damages were awarded to those parties as riparian proprietors on both sides. The court held this erroneous. They were

riparian proprietors on one side, and as such, it was held, were owners to the thread of the stream; but on the other side, their lots did not border on the stream at all, and consequently the common-law rule which gives the riparian proprietor the ownership in the bed of the river, had, as to those lots, no application. This conclusion is supported by *Ryan v. Brown, 18 Mich., 196,* and to a certain extent, by *Yates v. Milwaukee, 10 Wall., 497,* also. Of its correctness we have no question. The owner of city lots bounded on navigable streams, like the owner of any other lands thus bounded, may limit his conveyance thereof within specific limits, if he shall so choose, but when he conveys with the water as a boundary, it will never be presumed that he reserves to himself proprietary rights in front of the land conveyed, which he may grant to others for private occupation, or so occupy himself as to cut off his grantee from the privileges and conveniences which appertain to the shore of navigable water. Such privileges and conveniences constitute a part, and in many cases the principal part, of the value of the grant; and it is precisely in these cases of city lots that they are of most value, and generally constitute the chief inducement to the purchase; and the chief, or at least a very important element, in determining the price. These cases, therefore, of all others, are those in which the reason of the rule which infers an intent to convey the land under the water, is most apparent and forcible. And the rule itself is too valuable, and too important, to be varied by so immaterial a circumstance as that the boundary on the water is defined by a line, instead of by making use of words which to the common understanding would convey the same meaning. And what we have said of navigable waters, is equally applicable to all natural water courses. If, on the face of the plat, by reference to which the defendant bought, there was any thing which

distinctly indicated an intent on the part of the proprietors to make this case exceptional, and to reserve to themselves any rights in front of the water lots marked on it, after they should have been sold, the case would be different.

Assuming the *locus* called Sand Island, to be an island in fact, the inference would be natural and forcible that riparian rights were meant to be granted only to the middle of what is spoken of as the bayou. But we express no opinion on such a case, as it does not appear to have been an island, but rather a sand bar, or place of shallow water, exposed only when the wind was favorable or the water low. The practical construction which, for a long period, was put upon the deed conveying the lots was, that it conveyed all the rights of private ownership up to the main channel; and this practical construction, we think, was in strict accordance with the legal rule.

Such being our conclusion, it follows that the charge of the circuit judge was unexceptionable, and the judgment must be affirmed, with costs. The case calls for no opinion as to the riparian rights which the defendant may have had with an ownership bounded by the shore line; and therefore we express none.

The other Justices concurred.