MARGARET P. TURNER ET AL. v. NELSON HOLLAND ET AL.

[See 54 Mich. 300.]

*Dedication by plat—Riparian rights—City lots—Boundaries—Construction of plat.*

1. A plat made by the land-owner bounded certain lots upon a *bayou* navigable for vessels of light draft, without anything on the face of the plat, or in the dedicatory language, indicating an intention of reserving the bayou as *private* property, or restricting the rights of the purchasers of said lots to the margin of the water; which lots were conveyed by warranty deed without reservation, by their respective numbers, "according to said recorded plat."

   *Held*, that the deeds conveyed the lots according to the plat, and, as incident, the riparian rights which, under the decisions of this Court, ordinarily attach to lots bounded upon navigable or other natural water-courses.[1]  *Lorman v. Benson*, 8 Mich. 18; *Rice v. Ruddiman*, 10 Id. 125; *Watson v. Peters*, 26 Id. 517; *Pere Marquette Boom Co. v. Adams*, 44 Id. 404; *Richardson v. Prentiss*, 48 Id. 88; *Fletcher v. Thunder Bay River Boom Co.*, 51 Id. 277; *Webber v. Pere Marquette Boom Co.*, 62 Id. 627.

2. The owner of city lots bounded on navigable streams, like the owner of any other lands thus bounded, may limit his conveyance thereof within specific limits, if he shall so choose; but when he conveys with the water as a boundary, it will never be presumed that he reserves to himself proprietary rights in front of the land conveyed, which he may grant to others for *private* occupation, or so occupy himself as to cut off his grantee from the privileges and conveniences which appertain to the shore of navigable water.   *Watson v. Peters*, 26 Mich. 517.

3. The rule applied in the construction of conveyances from one individual to another, that courses and distances must give way to natural boundaries, is equally applicable to a dedication by plat made by the land-owner.

4. Water may be navigable without a current, and might not be with; nor is a current essential to the existence of riparian rights, which may exist in lakes or ponds where there is no current, and where the waters are not capable of navigation.

---

[1] See *Clute v. Fisher*, 65 Mich. 48; *Bigelow v. Shaw*, Id. 341.

Appeal from Saginaw. (Gage, J.) Argued February 10, 1887. Decided April 14, 1887.

Bill filed to restrain defendants from interfering with complainants' alleged riparian rights in a bayou adjoining their land. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Camp & Brooks,* for complainants.

*Wisner & Draper* (*Tarsney & Weadock,* of counsel), for defendants.

CHAMPLIN, J. The complainants, nine in number, set forth in their bill of complaint that they are severally the owners in fee of certain lots in Hoyt's subdivision of the James Riley reservation.

That the James Riley reservation is situated on the east bank of the Saginaw river, having about a mile frontage on the river, and extending to the west to the thread of the main channel of the river; that crossing said reserve, and extending the whole length thereof, and forming a part of said river, is a bayou called "Emerson Bayou," and between the bayou and the main channel of the Saginaw river is a middle ground, extending the whole length of said reserve, and for some considerable distance beyond on the bayou north, and forming a part thereof; that this bayou was formerly connected with the main channel of the Saginaw river south as well as north of the reserve, but, owing to the gradual growth and increase of said middle ground, and the construction of streets and docks across, near, and adjoining the south end, it is now connected with said river on the north only; that the bayou on the north empties into the Saginaw river at a point distant about 80 rods from complainants' lands, and, from that point to, in front of, and beyond said lands, such bayou is navigable for vessels drawing nine feet of water, and prior to the acts complained of, was used

for the purposes of navigation and commerce; and that the Saginaw river, from its mouth to a point south of the boundary line of said reserve, is a navigable river for vessels of like draft, and has been so used for the past 25 years and upwards.

That said reserve, including the middle ground, was formerly owned by Jesse Hoyt, and that, while he was such owner, he caused said reserve, including the middle ground, to be duly platted into lots, and the plat thereof to be duly recorded in the office of the register of deeds for Saginaw county; and afterwards said Hoyt conveyed by deed, with the usual covenants of warranty, and with apt and proper descriptions, the several parcels of land in said bill particularly described to complainants severally, or to the persons through whom complainants claim title, and each and every of said parcels of land were by said plat bounded on the west by said Emerson bayou, and in truth and in fact extended to the center line thereof, and that said Hoyt, in and by the conveyances to complainants, or to the persons through whom they claim title to the same, conveyed all his right, title, and interest in and to the whole of said lots, pieces, and parcels of said land, including the soil of said bayou, to the middle line thereof; and that their riparian rights are valuable, and enhance the value of their respective lots $1,000 or more.

That said Hoyt, in disregard of complainants' rights, has claimed, since he sold the parcels of land to complainants and their grantors, and now claims, to own the soil under the water in said Emerson bayou, in front of said lots, between the easterly bank of the bayou and the center line of the channel thereof, and under such claim has, by lease or otherwise, assumed to assign, convey, and transfer to defendant Nelson Holland the right to use said Emerson bayou, including that portion claimed by complainants, for the purpose of storing saw-logs; that, at the time such lease or conveyance to Holland was executed, complainants' deeds had been duly

recorded in the register's office of Saginaw county, and he had notice of the riparian rights of complainants in said bayou, and that said Hoyt had no interest or claim therein that he could lease, or otherwise sell or assign; and they claim that the claim of Jesse Hoyt constitutes a cloud upon their title, and diminishes the market value of their land.

That said Nelson Holland owns and operates a large saw-mill, situated on the bank of the Saginaw river, about 80 rods from the lands of complainants, and near the point where said bayou empties into the river, and that, acting with one Luther Holland, he has inclosed and converted the said Emerson bayou, in front of complainants' lands, into booming grounds, by driving piles in and across said bayou at suitable distances, and connecting the same with boom-sticks, so that now there is no means of ingress or egress to and from said lands of complainants through the channel of said bayou, and they are severally wholly deprived, by the said wrongful acts of said Nelson and Luther Holland, of the use and enjoyment of their said riparian rights, who claim that said Nelson Holland has the exclusive right to use and control said bayou; that Luther Holland is acting as the agent of Nelson, and, before he did said acts, had knowledge and notice of complainants' rights; that said Luther and Nelson Holland have, for several years past, operated said mill, and during such time claimed to have, and have exercised, exclusive control over said bayou, and have wholly excluded complainants therefrom, and from the use and enjoyment thereof; that, during the milling season, they have frequently caused said bayou to be filled with saw-logs, and have held and retained them therein for long periods, and until such logs were wanted at the mill for sawing; that the bark has become loosened and detached from said logs, and has sunk to the bottom, whereby the waters of said bayou have been gradually filling up; that defendants, disregarding and ignoring the rights of complainants, threaten to continue the main-

tenance and use of said boom, and to store saw-logs in said bayou.

Complainants pray that defendants may be decreed to remove all said obstructions, and for a perpetual injunction against their using said bayou for storing or booming logs therein in any manner which shall interfere with the rights and privileges of complainants as riparian owners.

After the bill was filed, Jesse Hoyt died, and the suit was revived against William L. Webber as the executor of Hoyt's will.

The defendants answered, denying that complainants have any riparian rights in Emerson. bayou by reason of their ownership of the land, or that by the terms of the deeds, or by the terms of the plat, the said lots, so conveyed to said complainants, or any of them, or their grantors, extended into or embraced any portion of said bayou; and state that on such plat each parcel was indicated by figures, giving the exact length, from Washington street west, of each side boundary line, and that such lines were parallel to each other, said lots being each 150 feet wide, and that the giving the distance in this way, and the number of the lot, was the same, in effect, as describing said lots by metes and bounds, giving the precise distance of each of the boundaries.

They deny that said lots were bounded on the west by the Emerson bayou, excepting as the distance measured may bring them to or near to the edge of the water, or into the water, or that it was ever intended that the bayou should be treated as the western boundary of said lots. They deny that the claim made by defendants constitutes a cloud upon complainants' title, or in any way diminishes the market value of their lands.

The defendants set up and claim that defendant Webber, as trustee under the will of said Jesse Hoyt, is the sole owner of so much of the James Riley reserve as is covered by the waters of the said Emerson bayou, except so far as the said

Jesse Hoyt in his life-time had sold and conveyed the same; that the waters over the soil in the said Emerson bayou were private, and that the said soil was private property; and they state that the said James Riley reservation became the property of the said James Riley by virtue of a certain treaty made between the United States and the Chippewa Nation of Indians in the year 1818, in which treaty this reservation of 640 acres of land was made for the use of the said James Riley, and that the said Jesse Hoyt afterwards became the owner of the title so granted by said treaty to the said James Riley, and that the said 640 acres of land included the land under water in the said Emerson bayou, and that it was so recognized by the government survey made in 1822 under the authority of the United States, and that the main channel of the Saginaw river was the western boundary of said reservation; that all points of land, marshy portions, and this bayou were private property, which passed from the United States to the said James Riley, and subsequently, through sundry conveyances, to the said Hoyt; that the said bayou is not a running stream,—is not a natural water-course; that it is merely a low piece of ground, with one end open to the Saginaw river, and the waters of said bayou rise and fall as the waters in said river rise and fall; and that the water in said bayou is stagnant, without current, by far the greater portion of the year.

That, under the laws and treaties of the United States, and the surveys made under its authority, and grants made pursuant thereto, this defendant is now the owner in fee of the soil under the water in the said Emerson bayou, and denies that the said complainants have any interest therein, and claims the right to fill up the whole of said bayou, and make the same solid land, as the interest of this defendant, as trustee, may require, or otherwise to make such use thereof as may be for the best interest of said estate.

Replications were filed and proofs taken, and upon hearing

in the court below a decree was entered in favor of complainants.

Emerson bayou is an inlet of the waters of Saginaw river. The river at this point runs nearly north; and this bayou, starting from the river, extends south a short distance from and nearly parallel to the river, a distance of over 4,000 feet. The land between the bayou and the river is known as the "middle ground." The average width of this inlet is 350 feet. Soundings were taken and testified to, which showed that, in front of the lots in question here, there was a depth of nine feet of water or over in the deepest places; and, at the time they were made, the water in the bayou was 2.25 feet above the low-water mark as established by the city of East Saginaw, which would leave a depth in low water of 6.75 feet. North of these premises there is still a greater depth of water, extending to the mouth of the bayou.

There is no doubt, from the testimony, that the Emerson bayou is navigable for vessels of light draft, nor that it has been navigated with steam-vessels for a great many years. Such navigation has not been general, but only as occasion required, but sufficient to demonstrate its navigable character.

The James Riley reservation consists of 640 acres of land reserved to James Riley in the Cass treaty with the Chippewa Indians, made at Saginaw, September 24, 1819, and which took effect March 25, 1820. By this treaty the Chippewa Nation of Indians ceded to the United States a large quantity of land; but by article 3 of the treaty certain reservations were made for the use of each of certain persons mentioned, and their heirs. That to James Riley was in the following language: ·

"For the use of James Riley, the son of Me-naw-cum-e-go-qua, a Chippewa woman, six hundred and forty acres, beginning on the east side of the Saginaw river, nearly opposite to Campeau's trading-house, and running up the river for quantity."

The reservation was afterwards surveyed by the United
States government. In making such survey the surveyor, as
shown by the field-notes, did not commence at the point
indicated in the treaty, and thence go up the river for quan-
tity, but did commence at the point in the United States
survey where the section line between sections 25 and 36
intersects the river; thence running east 115 chains, to the
town line; and thence north, on the town line, 62 chains;
and thence west, 72 chains and 46 links, to Saginaw river;
and thence up stream, with the course of the river, to the
place of beginning. The field-notes indicate that the town
and section lines were surveyed before the reservation was.
No mention is made in the field-notes of the bayou. The
south line did not touch it, and the north line crossed the
bayou about 600 feet south of its intersection with Saginaw
river. The premises in question are indicated on the diagram
found on page 461 as lots 45, 47, 48, 49, 50, 51, north half
of lot 52, and lot 53.

It is claimed that the portion of the bayou included in the
reservation was the private property of James Riley, and was
confirmed to him by the United States; that the title passed
to him of the bayou as land, and that Hoyt succeeded to the
title. This claim may be conceded. In 1867, Jesse Hoyt,
being the owner, platted the reservation into lots and streets,
and upon this plat he designated the waters in question as
"bayou." His dedication, indorsed upon the map, reads as
follows:

"A plat of a subdivision of the James Riley reservation in
town 12 north, of range 4 east, in Saginaw county, Michi-
gan, to be known as 'Hoyt's Subdivision of the James Riley
Reserve.' The portions with shaded boundaries on the map
have been sold by the proprietor to the parties whose names
are marked on the lots. The lots sold and bounded on the
water are sold only as far as the shaded portion extends,
except where bounded on the main river. The figures indi-
cating distance denote the distance in feet and hundredths
of a foot, and the courses of the several streets are as stated
on the plat."

The plat was executed on the eleventh and recorded on the twelfth day of April, 1867. None of the lots in question here are shaded. Those touching the bayou in question, which were shaded and marked "deeded," are numbered 2, 3, 4, 5, 6, 7, and 19.

If, in platting this land, the proprietor bounded his lots upon the bayou, and has conveyed the lots so bounded without reserve, it is a legal deduction that all the riparian rights incident to the ownership of the shore passed to his grantees. *Richardson v. Prentiss*, 48 Mich. 88; *Pere Marquette Boom Co. v. Adams*, 44 Id. 404; *Lorman v. Benson*, 8 Id. 18; *Rice v. Ruddiman*, 10 Id. 125; *Watson v. Peters*, 26 Id. 517; *Fletcher v. Thunder Bay River Boom Co.*, 51 Id. 277; *Webber v. Pere Marquette Boom Co.*, 62 Id. 627.

The fact that the proprietor was the owner of the soil under the water when he platted would make no difference in the application of the principle, and the only question is whether the proprietor in this instance did, by the plat which he made, and according to which he sold the lots to the complainants, bound such lots by the bayou as the western line of the lots. It is claimed by counsel for defendants that when Mr. Hoyt made the plat, bounding the lots on one side by Washington street and on the other by the bayou, giving the length of the line extending from Washington street to the bayou edge on each side of every city lot, as is the eastern line which separates it from Washington street,— the eastern boundary line of said lot,—and there being nothing on the plat which shows a dedication or intention to dedicate the bayou to public use, shows an intent to restrict the lots to the dimensions given on the plat, and to retain the bayou for his own use; and they claim that this position is strengthened by the language in the dedication with reference to the property sold and indicated by the shaded lines.

It was said by Mr. Justice COOLEY, in delivering the opinion of the Court in *Watson v. Peters, supra*, that—

"The owner of city lots bounded on navigable streams, like the owner of any other lands thus bounded, may limit his conveyance thereof within specific limits, if he shall so choose, but, when he conveys with the water as a boundary, it will never be presumed that he reserves to himself propri-etary rights in front of the land conveyed, which he may grant to others for private occupation, or so occupy himself as to cut off his grantee from the privileges and conveniences which appertain to the shore of navigable water."

The same claim was also made in that case as in this, that a conveyance made of a lot and block conveyed nothing out-side these definite boundaries, any more than it would if in the conveyance the lines were specifically described by stakes, courses, distances, and quantities; but it was held, as above stated, that, if there was no reservation, riparian rights would attach to lots bounded by navigable waters or natural water-courses.    Mr. Justice COOLEY also, in that connection, said:

"If, on the face of the plat by reference to which the defendant bought, there was anything which distinctly indicated an intent on the part of the proprietors to make this case exceptional, and to reserve to themselves any rights in front of the water lots marked on it, after they should have been sold, the case would be different."

I do not see anything upon the face of this plat, or in the language of the dedication, which indicates an intention of reserving the bayou as private property, or restricting pur-chasers of lots to the margin of the water. The fact that the length of the lines of the lots bordering on the bayou are given in feet and decimals of a foot does not indicate an intention to limit the lot to the length of the line specified. We must apply to this dedication by plat the same rules of construction that we would in conveyances from one indi-vidual to another; and the rule is well established that courses and distances must give way to natural boundaries. Here the natural boundary is laid down upon the plat, and is marked "Bayou." The lots as platted run from Washing-

ton street to the bayou, and from the bayou to the Saginaw river, following the course and sinuosities of the water's edge for their west and east boundaries.   There is a lot bordering on the bayou marked and designated upon the plat as "Ship Yard," which raises a strong inference that the proprietor regarded the bayou as navigable, and the lots platted as fronting thereon as unrestricted for any use for which water lots are capable of being employed.   The language in the dedication referring to the shaded portions affords the strongest evidence of the intent of the proprietor not to place any reservation or restriction on the lots platted, but not sold. He says:

"The lots sold and bounded on the water are sold only as far as the shaded portion extends, except where bounded on the main river."

No language is employed to express an intention of reserving the waters of the bayou for private use, or the land under it from sale or disposition as parcel of the lot bounded by such water.   On the contrary, the inference to be deduced from the language used, it seems to me, is that the proprietor did not intend to reserve any rights in the bayou in front of the lots he then platted, but had not sold.   Otherwise would he not have said:

"The lots platted as bordering upon the waters of the bayou, whether sold or unsold, extend no further than their boundaries as marked on the plat?"

Why make a distinction between lots sold, or those lots sold and shaded, and the others, if there was to be no difference in the rights of ownership of such lots?   The conveyances to complainants described the lots conveyed by their respective numbers,—

"According to the plat of Hoyt's subdivision of the James Riley reserve; said plat being of record in the office of the register of deeds for Saginaw county, Michigan."

Each of the deeds was given without any reservation, and'.

are full covenant warranty deeds. I think the deeds in terms convey the lots according to the plat, and, as incident, the riparian rights, which, under the decisions of this Court, ordinarily attach to lots bounded upon navigable or other natural water-courses.

Evidence was introduced, and which was uncontradicted, which showed that the bayou in question had been used both before and since the platting, by Hoyt and those claiming under him, for the purpose of booming or storing saw-logs; and defendants claim that this actual occupancy of the bayou by a use, as claimed by them, which is entirely inconsistent with the claim made by complainants, which, so far as appears, has not, prior to filing the bill, been questioned by them, is a practical construction, of between 15 and 20 years, of the relative rights under the plat, by which complainants are bound. If the testimony showed that the use and occupation by Hoyt, and those claiming under him, had been all this while exclusive and inconsistent with the claim now set up by complainants, it would be entitled to great weight in the determination of what construction the plat and the deeds to complainants should have placed upon them. But the occupation has not been exclusive. The testimony shows that the navigation of the bayou has on different occasions been improved by dredging; that vessels have navigated the bayou, and brought freight, such as building stone, to one of the complainants' lots; that it has been used by different parties for laying up vessels during the winter season; and that vessels have been built and launched at the ship-yard; and I have no doubt that it has always been treated as public navigable waters.

In 1863, permission was granted by the board of supervisors of Saginaw county to the East Saginaw & Saginaw City Bridge Company to build a bridge across Saginaw river at the place where Bristol street comes to the river. This is but a short distance below the mouth of the bayou. The super-

visors required that the bridge should be constructed with two draws or swings, the openings to be at least 70 feet in length, providing for the passage of boats or vessels navigating said river. One of these draws is constructed so as to accommodate vessels entering or leaving the bayou, which is some indication that it was regarded as navigable water. "Bayou ditch" is a natural water course, delineated on the map, which in times of wet weather drains a considerable territory, and empties into the bayou nearly at its upper end. Some of the witnesses testified that this ditch was dry in dry weather, and others that it discharges, at times, sufficien t water to cause a perceptible current through the bayou. I regard it as immaterial whether a current flows through the bayou or not. Water may be navigable water without a current, and it might not be with. Neither is a current essential to the existence of riparian rights. They may exist in lakes or ponds where there is no current, and they may exist where the waters are not capable of navigation.

The relief granted by the decree of the circuit court is affirmed, with costs.

The other Justices concurred.