## SANDS v. GAMBS.

TOWN PLATS—CONSTRUCTION—BOUNDARIES – RIPARIAN RIGHTS.

> The owner of lands adjoining a river platted a portion of the same into village lots.   Upon the plat as recorded, between the river and the lots, was a strip 450 feet in length, lying parallel with the river, marked "Slab Dock," which consisted of slabs extending into the water from the bank, and which at some points was entirely submerged.   The inner line of this strip was substantially coincident with the meander line of the stream; but the lot lines, according to the distances marked thereon, carried the lots past the meander line, and, in some places on the plat, to within a few feet of the river side of the dock, while beyond the lines of some of the lots when so extended there was in fact high land.   No way to the strip was reserved by the plat, the only access thereto being from the river or from other parcels of land not platted; and the owners of the abutting lots, for many years, without protest, treated the dock property as part of their respective holdings. *Held*, that it was not the intention to reserve the dock from the dedication, but that the platted lots extended to the river.

Error to Manistee; McMahon, J.   Submitted June 6, 1895.   Decided September 26, 1895.

Ejectment by Louis Sands against Joseph Gambs and another.· From a judgment for plaintiff, defendants bring error.   Reversed.

*Smurthwaite & Fowler*, for appellants:

Government meander lines do not limit boundaries on waters.  *Twogood* v. *Hoyt*, 42 Mich. 609; *Boom Co.* v.

*Adams*, 44 Mich. 403; *Palmer* v. *Dodd*, 64 Mich. 474; *Clute* v. *Fisher*, 65 Mich. 48. When the boundary is the water's edge, no matter by what terms indicated, the grant extends to the thread of the stream, unless expressly reserved. *Norris* v. *Hill*, 1 Mich. 202; *Watson* v. *Peters*, 26 Mich. 508; *Richardson* v. *Prentiss*, 48 Mich. 88; *Cole* v. *Wells*, 49 Mich. 450; *Fletcher* v. *Boom Co.*, 51 Mich. 277; *Turner* v. *Holland*, 65 Mich. 453; *Butler* v. *Railroad Co.*, 85 Mich. 246; *Gilbert* v. *Emerson*, 55 Minn. 254; *St. Clair Co.* v. *Lovingston*, 23 Wall. 46.

*Dovel & Smith*, for appellee:

It is beyond question, at least in this State, that the owner of lands fronting upon a navigable stream may separate the low lands from the bank or shore, and convey them to different grantees, or, as in a case like this, he may reserve the water privileges or low lands; and he does so reserve them whenever and wherever there is anything upon the face of the plat or deed to show that it was not intended to dedicate or convey the same,—in other words, enough to overcome the legal presumption which arises where the grant in express terms extends to the stream or river as a boundary. *Watson* v. *Peters*, 26 Mich. 508; *Richardson* v. *Prentiss*, 48 Mich. 91; *Fletcher* v. *Boom Co.*, 51 Mich. 281; *Turner* v. *Holland*, 65 Mich. 463; *Nichols* v. *Furniture Co.*, 100 Mich. 242; *Hanford* v. *Railroad Co.*, 43 Minn. 104; *Gilbert* v. *Eldridge*, 47 Minn. 210; *Bradshaw* v. *Mill Co.*, 52 Minn. 59; *Gilbert* v. *Emerson*, 55 Minn. 254, 60 Minn. 62; *People* v. *Madison Co. Supervisors*, 125 Ill. 9. But in the present case, as appears from the plat, defendants' lots do not border upon the stream, and hence no riparian rights could attach. *Palmer* v. *Dodd*, 64 Mich. 476; *Nichols* v. *Furniture Co.*, 100 Mich. 242; *Bristol* v. *Carroll Co.*, 95 Ill. 84; *Trustees of Schools* v. *Schroll*, 120 Ill. 509; *People* v. *Madison Co. Supervisors*, 125 Ill. 9.

MONTGOMERY, J. This is an action of ejectment. The plaintiff recovered by direction of the court, and defendants bring error.

In September, 1863, Filer & Smith were the owners of lot 6, section 1, town 21 N., range 17 W., and platted a portion of the same as an addition to the village of Manistee. Upon the recorded plat, all the portion adjoining

the river, consisting of a continuous parcel east, north, and west of the lots and blocks, was marked as reserved, the other boundary of the reserve being Manistee river. In 1868, the title to this reserve had been vested in M. S. Tyson & Co., and they platted a portion of the same. The plat is as follows:

The surveyor's certificate, which was confirmed in the dedication by the owners, was as follows:

"This is to certify that I have been employed by Mark S. Tyson, George W. Robinson, and Richard G. Peters, under the title of M. S. Tyson & Co., to survey and lay out into village lots a portion of lot number six, section number one, in township number twenty-one north, of range number seventeen west, and known also as that part of the reservation of Filer & Smith's addition to the village of Manistee lying contiguous to, and immediately north and west of, block number one in said Filer & Smith's addition; that I have laid out a street to the north

and west of said block number one, and nine lots, as
appears by the plat here represented, which is a cor-
rect plan of the said survey."

The *locus in quo* is that portion of the land marked
"Slab Dock," abutting on the lots 1, 2, and 3, and lying
between them and Manistee river. Both parties derive
title from the platters. If the platted lots run to
the river, the legal title is in the defendants. If the
lots only extend to the slab dock, the legal title is in the
plaintiff.

It appears from the evidence that the so-called slab
dock consisted of slabs, the product of the mill of M. S.
Tyson & Co., with the ends resting on the shore and
extending out into the river. Mr. Peters, a witness for
the plaintiff, testified:

"The slabs were piled in just as they came from the
saw,—broken pieces and all. The ends of the pieces were
laid in the bank, just enough to hold them, and the bal-
ance extended out into the river.  *  *  *  There was a
low slab dock extending from the mill clear down across
this property. Near this property, I don't think it was
very much above the water."

"George A. Ford, a witness for the defendants, testi-
fied:

"There was no slab dock there before Smith bought
[August 15, 1868, after the platting]. Nothing but what
slabs were dumped there and burned up."

Another witness testified that the slab dock extended
only part way across these lots, and he completed it in
1870.

It further appears that the meander line was substan-
tially coincident with the south line of the slab dock,
as marked at the east side of the plat. But the lot lines,
as marked in feet, carried the lots past the meander line,
and, in some places on the plat, to within four or five feet
of the river side of the slab dock, although the shaded
portion on the plat does not indicate this irregularity;
so that it is apparent that the shading for the slab dock

was to some extent arbitrary, and did not conform to any actual existing structure on the ground. There was testimony that opposite the lots in question there was high land for a greater distance from the street than that marked on the plat to indicate the lot lines. In other words, if the plaintiff's contention be true,—that the slab dock is a monument,—a portion of that strip marked on the plat is not a slab dock, but solid land.

The question of the intention of the platters is not altogether clear. So far as any practical construction of the parties can be of aid, it favors the contention of defendants, for it appears that the defendants and their grantors have for many years, at intervals, treated the land as part of the platted lots, and this without any protest from those through whom plaintiff derives title. This fact is not without its significance. *Turner* v. *Holland*, 65 Mich. 465; *Watson* v. *Peters*, 26 Mich. 517.

No case has been cited, nor have we found any, which can be said to rule this case. There are, however, certain rules which may be of aid in determining the question. The tendency of the decisions is to turn every doubt upon expressions which fix the boundary next the river in favor of a contact with the water. Ang. Water Courses, § 23; *Butler* v. *Railroad Co.*, 85 Mich. 246. In this class of cases the rule also obtains that grants must be construed most strongly against the grantor. *Butler* v. *Railroad Co.*, *supra.* Monuments usually control courses and distances. *Gilman* v. *Riopelle*, 18 Mich. 145; *Turner* v. *Holland*, 65 Mich. 453. Applying these rules, we find that the dedication carried the lines past the meander line, and to the slab dock, which was the only monument, except the river. This slab dock was, in large part, submerged. There is nothing in the nature of a reservation in the certificate of survey or the dedication. If the line of the lots, as marked in feet, measures defendants' holding, it comes into the slab dock as marked on the plat, and in other portions of the plat this is still more marked. Another fact which indicates that there was no intention

to reserve this strip is that 'no way to it was reserved, the only access to it being from the river, or from other pieces of land not platted. For independent use as a dock, it would apparently be valueless. It could only be used either in connection with the platted lots, or with reserved strips to the east and west, which would leave a dock 450 feet in length accessible only at the ends, and in some places consisting of but a very narrow strip. Upon full consideration, we are of the opinion that it was not intended to reserve from the dedication the slab dock, but that it was so designated in the plat as showing its adaptation to use in connection with the lots, and was considered and treated as part of the stream.

In this view, it becomes unnecessary to discuss the other questions raised.

The judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.