### WEIMER *v.* GILBERT.

1. DEEDS—CONSTRUCTION—AMBIGUITY—INTENT.
   An ambiguous deed is construed according to the probable intent
   of the parties.

2. SAME—DESCRIPTION—LAKE LOT—AMBIGUITY.
   Description in deed stating that the point of beginning is on
   the shore of a lake, then describing said point of beginning
   by a particular ground description *held,* ambiguous, where
   the point of beginning, as determined by the ground descrip-
   tion, is nowhere near the present shoreline of the lake.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 23 Am Jur 2d, Deeds § 159.
[2, 4] 23 Am Jur 2d, Deeds §§ 159, 236.
[5, 6] 12 Am Jur 2d, Boundaries § 67; 23 Am Jur 2d, Deeds §§ 222,
       232, 234–238, 240, 241.
[7, 8] 56 Am Jur, Waters § 254; 23 Am Jur 2d, Deeds §§ 236, 256.
[9] 56 Am Jur, Waters §§ 476, 477; 23 Am Jur 2d, Deeds §§ 236,
    256.
[10] 56 Am Jur, Waters §§ 254, 476, 477; 23 Am Jur 2d, Deeds
     §§ 236, 256.

3. SAME—AMBIGUITY—INTENT—CIRCUMSTANTIAL EVIDENCE.
   The intent of the parties may be gathered from surrounding facts
      and circumstances indicating the probable intent of the parties,
      where uncertainty or ambiguity exists in a deed.

4. SAME—DESCRIPTION—IDENTIFICATION.
   Lands are not identified by description until one is placed in
      the position of the parties by whom the description was pre-
      pared, and reads it with the knowledge of the subject matter
      which they had at the time.

5. SAME—COURSES AND DISTANCES—NATURAL BOUNDARY—INTENT OF
   PARTIES.
   Courses and distances in a deed must give way to a natural
      boundary, where the facts and circumstances indicate an intent
      by the parties that the natural boundary be controlling.

6. SAME—AMBIGUITY—NATURAL BOUNDARY—COURSES AND DISTANCES
   —INTENT OF PARTIES.
   Natural boundary set forth in a deed *held*, controlling over
      courses and distances in said deed where (1) the beginning
      point was stated as the shore of a lake, (2) a further
      description of said beginning point in courses and distances
      resulted in a beginning point nowhere near the shore of said
      lake, (3) there was evidence that the shore of the lake at
      one time extended to the beginning point as stated in courses
      and distances, (4) the evidence indicated an intent by all
      parties concerned that a lake lot be conveyed, and (5) a sur-
      véyor gave plausible testimony that a key monument for the
      courses and distances description had been set on an elevated
      bank because of the varying water level of the lake.

7. SAME—CONSTRUCTION—PRESUMPTION—RIPARIAN RIGHTS.
   It is presumed that a grant of land bounded by a lake or pond
      is intended to include the contiguous land covered by water
      appurtenant to it, since such constitutes one of the advantages
      of its situation and a material part of its value, and enters
      largely into the consideration for acquiring it.

8. SAME—RULE OF CONSTRUCTION—RIPARIAN RIGHTS.
   It is a well-accepted rule that a person owns to the water's
      edge absent some reservation to the contrary in his conveyance
      of waterfront land.

9. SAME—CONSTRUCTION—RIPARIAN RIGHTS—CHANGING SHORELINE.
   The fact that the shoreline of a lake has receded from what was
      thought or intended to be the point of beginning as set forth

in plaintiffs' deed does not preclude plaintiffs from owning to the water's edge, since the State law is clear that where property abuts a shoreline, that shoreline is the boundary of the property notwithstanding its subsequent advancement or recession.

10. Same—Description—Lakefront—Recession of Shoreline.
  Description in deed of 50' lakefront lot in original deed "commencing on the shore," as reformed by consent decree "beginning at a point on the shore," is deemed to include land to water's edge after recession of shoreline.

Appeal from Branch; Andrews (Mark S.), J. Submitted Division 3 February 8, 1967, at Lansing. (Docket No. 1,488.)    Decided June 27, 1967.

Complaint by Paul Weimer and Barbara Weimer against Wilfred James Gilbert, Elizabeth Gilbert, and Roy E. Davis seeking reformation of a deed or, in the alternative, a determination that plaintiffs' property extended to the shore of Marble lake. Judgment for plaintiffs. From denial of new trial defendants Gilbert appeal. Affirmed.

*Clay T. Brockman,* for plaintiffs.

*Megargle & Megargle (Thomas C. Megargle,* of counsel), for defendants.

Holbrook, P. J.    This appeal concerns a dispute as to the ownership of land situated on the shore of Marble lake in Branch county, Michigan. After trial, the court in its decision construed plaintiffs' deed to include the disputed property. Defendants have appealed from this decision.

The relevant facts appear as follows: After renting a cottage on Marble lake for a number of years, Orlin Taylor and his wife purchased a lake lot in 1947 and received in 1949 from Anna Davis and her son Roy Davis a deed with description as follows:

"Commencing on the shore of Marble lake at a point which bears 131.2 feet north and 78.1 feet west of the meander post on the east and west one-quarter line of section 33, T6S, R5W, thence N 56 degrees 13′ E 100 feet, N 33 degrees 47′ W 50 feet, S 56 degrees 13′ W 100 feet to the shore of Marble lake, S 33 degrees 48′ E along the shore 50 feet to the place of beginning."

Beginning in 1947, Mr. Taylor constructed a cottage on what he understood to be his lake lot. He discovered subsequently, by comparing his deed with that of a neighbor's, that his cottage was not located on the land described in his deed.

Early in 1953, Wilfred Gilbert and his wife purchased all the remaining property owned by the Davises surrounding Marble lake including the land on which the Taylors had their cottage. About this same time, Edward Knapp and his wife desired to purchase the property and cottage of the Taylors. In order for the Taylors to convey good title to the Knapps—the Taylors, Knapps, Gilberts, and Davises entered into a consent decree in 1956. This decree reformed the 1949 Davis warranty deed to the Taylors and also reformed in a corresponding manner the 1953 warranty deed of the Davises to the Gilberts.

In reforming the 1949 warranty deed of the Davises to the Taylors, the decree amended the property description to read as follows:

"A parcel of land lying in the NW¼ fr. of section 33, town 6 south, range 5 west, Michigan principle meridian, township of Quincy, county of Branch, State of Michigan and being more particularly described as follows, to-wit: *Beginning at a point on the shore of Marble lake,* said point of beginning being north 172.8 ft., thence west 105.9 ft., thence N 33 degrees 47′ W 70 ft. from a concrete and iron

monument at the top of the bank on the east shore
of Marble lake on the east and west quarter line
of said section 33, said monument being 1688.9 ft.
west of the center of said Sec. 33, and running thence
N 56 degrees 13′ E 100 ft., thence N 33 degrees 47′
W 50 ft., thence S 56 degrees 13′ W 100 ft., thence
S 33 degrees 47′ E 50 ft. to the point of beginning."
(Emphasis supplied.)

On obtaining a deed pursuant to the consent de-
cree, Mr. Knapp had his property surveyed. A lot
50′ by 100′ was marked out from the property de-
scription and stakes were driven in at the lot cor-
ners. From the lot line as indicated by the stakes,
to the shoreline of Marble lake there was dry land
of 3 to 80 feet. The amount of dry land in front
of the lot line depended on the level of the lake
which was high in spring but low in the late fall.
The area affected was generally low but level and
therefore a drop of 1 foot in the lake level would
expose 15 or more feet of land.

When the survey was completed and the lot lines
indicated by the stakes, Mr. Gilbert told the Knapps
to stay off the land between their lot and the shore-
line of Marble lake. Mr. Gilbert cleared the dis-
puted land of brush, and in 1958 installed a septic
tank thereon. As a result a suit in trespass was
begun by the Knapps against the Gilberts in 1959;
however, the suit was subsequently dismissed for
lack of progress. In the following years, Mr. Gil-
bert reminded the Knapps to stay off the disputed
land on several occasions. In 1962, during the latter
part of the year when the area in question was dry,
Mr. Gilbert had it filled in.

The Knapps in 1964 deeded the property as
described in their deed and the consent decree of
1956 to Paul Weimer and his wife, plaintiffs herein.
The Weimers were ordered to stay off the disputed
land that summer by Mr. Gilbert when they at-

tempted to cross over it in order to gain access to the
lake.   The Weimers began a circuit court action
against the Gilberts seeking that their deed be re-
formed as intended in the original conveyance to
their predecessors (the conveyance of Davises to
Taylors) or in the alternative that the court decree
plaintiffs to be the owners of the disputed property.

This action was heard by the same trial judge
who had signed the consent decree of 1956.  After
observing the exhibits and hearing testimony from
plaintiffs and defendants, Mr. Knapp, Mr. Taylor
and a surveyor, and after himself visiting and view-
ing the property, the trial judge construed plaintiffs'
deed to include the disputed land.

The issue herein raised is whether the Taylor
deed as reformed by the 1956 consent decree may be
construed so as to effect the intent of the parties
and if so, whether such reformed deed includes lands
to the present shoreline of Marble lake.

Defendants contend that plaintiffs' deed cannot
be construed as to the intent of the parties because
it is unambiguous.   However, the record indicates
the trial court to have found the deed of plaintiffs
to be ambiguous.   When defense counsel objected
to certain testimony on the grounds that "The deed
speaks for itself," the trial court answered the ob-
jection by saying, "Well, the deed is ambiguous.
That's why we are taking all of this testimony."

The particular description of plaintiffs' deed
states that the point of beginning is *on the shore of
Marble lake,* and then proceeds to describe said point
of beginning.   On applying this description to the
ground, plaintiffs' deed becomes uncertain and am-
biguous because the particularly described point of
beginning is nowhere near the present shoreline of
Marble lake.

Where uncertainty or ambiguity exists in a deed
the intent of the parties may be gathered from sur-

rounding facts and circumstances to enable the court to reach the probable intent of the parties in order that the court may give it effect. *Bice* v. *Holmes* (1944), 309 Mich 110; *Curran* v. *Maple Island Resort Association* (1944), 308 Mich 672; *Farabaugh* v. *Rhode* (1943), 305 Mich 234. Moreover, a description is to be looked at in a special way according to Mr. Justice COOLEY in *Willey* v. *Snyder* (1876), 34 Mich 60, 61:

"Descriptions do not identify of themselves; they only furnish the means of identification. They give us certain marks or characteristics,—perhaps historical data or incidents,—by the aid of which we may single out the thing intended from all others; not by the description alone, but by that explained and applied. Even lands are not identified by description until we place ourselves in the position of the parties by whom the description has been prepared, and read it with the knowledge of the subject matter which they had at the time."

At the time the ambiguous and uncertain description was made, plaintiffs' predecessors in title, the Taylors, held a warranty deed from the Davises which described a 50′ by 100′ lake lot. From 1953 to 1956, the Knapps used without objection on the part of the Gilberts the disputed area, and it has only after the consent decree of 1956 that controversy arose.

Mr. Knapp, who purchased from the Taylors, testified as follows:

"*Q.* What was your purpose in buying this particular property?

"*A.* Well, because it was the only thing available for sale.

"*Q.* Well, what do you mean?

"*A.* At Marble lake. My wife wanted a cottage at Marble lake for the summer and it was next to

Dr. Walton's and, they were very good friends, and it was through Waltons that we found out Mr. Taylor wanted to sell this property."

The observation may also be made that the consent decree in reforming the deed of Davises to Taylors failed to adequately and clearly describe the land intended to be conveyed. A reason for this failure might be attributed to describing the land according to a 1953 survey and in connection therewith the use of a different point of beginning. Regardless of the reason, several conclusions are obvious: the Davises intended to convey a 50′ by 100′ lake lot to the Taylors; the Taylors, and later the Knapps intended to purchase a lake lot; the Gilberts purchased from the Davises excepting certain property which included the 50′ by 100′ lake lot previously sold to the Taylors; and plaintiffs are presently in possession of a 50′ by 100′ lot which defendants contend not to be a lake lot.

Another poignant insight in arriving at the conclusion that plaintiffs' deed describes a lake lot is gained from testimony relating to the varying water level of Marble lake. The testimony of Mr. Knapp stated that the highwater mark at one time came within 2 to 3 feet of two oak trees located immediately in front of the Taylor cottage and that in past years in early spring the lake waters flooded the area from the oak trees to the lake; the survey obtained by Mr. Knapp in 1956 placed the stakes of the lot line closest the lake by these oak trees.

Further support for the construction given the description contained in plaintiffs' deed is derived from the testimony of Mr. Reed, a surveyor.

"*A.* The starting point is at the beginning of a point on the shore of Marble lake. * * *

"*Q.* How would you describe this land between your survey lines and the lake?

"*A.* Well, the property that we surveyed was at the top of the high bank, and then—and the westerly side of the description was right at the edge of the top bank, as I recall, and the bank sloped steeply down to a lower elevation and then gently to the lake, the water's edge of the lake.

"*Q.* Would it have been unusual to use this starting point as a starting point in your surveying along the lakeshore?

"*A.* Well, perhaps the other section in front of it might have at different times of the year been under water. And, so the surveyor would set the stakes back a ways from the water's edge so that they wouldn't be covered at certain periods of the year."

The fact that the waters of Marble lake extended at one time to the courses and distances as expressed in the description of plaintiffs' deed, together with the plausible testimony of the surveyor for setting a key monument on an elevated bank away from a varying water level, leads to an inescapable conclusion, viz: the facts and circumstances of the case at bar present a situation where courses and distances must give way to a natural boundary. *Turner v. Holland* (1887), 65 Mich 453; *Farabaugh v. Rhode, supra.*

This construction is aided by the presumption found in *Bauman v. Barendregt* (1930), 251 Mich 66, 70, citing *Hardin v. Jordan* (1891), 140 US 371, 391 (11 S Ct 808, 35 L ed 428):

"When land is bounded by a lake or pond, the water, equally as in the case of a river, is appurtenant to it; it constitutes one of the advantages of its situation, and a material part of its value, and enters largely into the consideration for acquiring it. Hence the presumption is that a grant of land

thus bounded is intended to include the contiguous land covered by water."

There is no intention here indicated on the part of the original grantors (the Davises) to leave a parcel of ungranted land between the lake and the land described by courses and distances in plaintiffs' predecessors deed. All facts and circumstances, and the intentions of the various grantees, point towards the grant of *a 50′ by 100′ lake lot on the shore of Marble lake.*

The fact the shoreline of the lake has receded from what was thought or intended to be a point of beginning on the shore of Marble lake as described in plaintiffs' deed is not fatal. The well-accepted rule applies that a person owns to the water's edge absent some reservation to the contrary in his conveyance.

"In Michigan the law is clear that where property abuts a shoreline, that shoreline * * * is the boundary of the property notwithstanding its subsequent advancement or recession." *Cutliff* v. *Densmore* (1958), 354 Mich 586, 590.

We conclude that the trial judge was correct in determining the description in plaintiffs' deed included lands to the present receded shoreline of Marble lake.

Affirmed. Costs to appellees.

FITZGERALD and J. H. GILLIS, JJ., concurred.