*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT C. SAUNDERS and MELISSA K. SAUNDERS,

        Plaintiffs/Counterdefendants-Appellees,

v

JEFFREY J. RHODES and TERESA E. RHODES,

        Defendants/Counterplaintiffs/Third-Party Plaintiffs-Appellants,

and

MECOSTA COUNTY ROAD COMMISSION,

        Third-Party Defendant.

UNPUBLISHED
June 18, 2020

No. 347524
Mecosta Circuit Court
LC No. 17-024068-CH

Before: BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

In this property dispute, defendants appeal by right the trial court's order quieting title to a portion of lakefront property in favor of plaintiffs. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case involves property located near the shoreline of Chippewa Lake in Chippewa Township. Plaintiffs own "Lot 1" of the Pickerel Point plat, which was platted in 1927 by Charles and Lillian Tillman. According to the plat of Pickerel Point, Lot 1 is located at the southeasternmost point of the land embraced within Pickerel Point and constitutes the southeastern corner boundary of the Pickerel Point plat. Chippewa Lake is located to the northeast of Lot 1 with no intervening lots between Lot 1 and the shoreline, although the parties dispute whether there is unplatted land that is not part of Lot 1 lying between Lot 1 and the shoreline. Defendants

-1-

own "Parcel B," which is located outside of Pickerel Point to the southeast of Lot 1. As owners of Parcel B, defendants also hold an easement over the southeasterly 19 feet of Lot 1. The existence, location, and scope of this easement are not at issue in this appeal.

Plaintiffs and defendants are both able to trace their respective chains of title to Roy and Elizabeth Tilman,[1] who at one point held ownership of both Lot 1 and Parcel B. In 1991, Roy and Elizabeth Tilman conveyed Parcel B to William and Cornelia Oakley. Parcel B was further described in the deed with a metes-and-bounds description. The deed also stated that the conveyance of Parcel B was "subject to the road right-of way of Chippewa Drive and including all land to the water's edge of Chippewa Lake and including an easement over the southeasterly 19 feet of Lot 01 Pickeral [sic] Point Plat." Chippewa Drive runs approximately northeast between Lot 1 and the southeast portion of Parcel B, thus approximately running over a section of Parcel B on the northwest side, and continues running northeast along the shoreline of Chippewa Lake with the shoreline on the northwest side of Chippewa Drive. Parcel B was subsequently conveyed by mesne conveyances to defendants, who took ownership of Parcel B in 2012.

In 1994, Roy and Elizabeth Tilman conveyed to Lyle and Donna Shay the property described on the deed as "Lot one, Pickeral [sic] Point, being a portion of Government Lot 4 Section 30, and Government Lot 5 Section 29 Chippewa Township Mecosta County, Michigan." This deed further stated that "Sellers reserve an easement over the Southeasterly 19 feet of said property for the purpose of ingress and egress to Chippewa Lake for the benefit of owners and occupants of a certain parcel of property described as: Parcel B . . . ." Lot 1 was conveyed by mesne conveyances to Daniel and Lesa Remenap, who in turn conveyed Lot 1 to plaintiffs 2016.

At issue in this case is the ownership of a strip of land located on the Lot 1 side of Chippewa Drive and abutting the shoreline of Chippewa Lake.

Defendants claim ownership of this lakefront strip of land as a part of Parcel B. Defendants contend that the Pickerel Point plat did not encompass this specific strip of land because it depicts Lot 1 with a straight-line boundary on the northeast side of Lot 1 and southwest of the shoreline and utilizes a metes-and-bounds description that does not incorporate the shoreline, thereby creating a strip of unplatted land between the northeast boundary line of Lot 1 and the shoreline of Chippewa Lake. Related to this contention, defendants further argue that the plat does not contain any language indicating that the lots near the shoreline are bounded by a meander line or actually extend to the water's edge and that the plat indicates that permanent monuments were placed at all angles in the boundaries of the land platted, which includes the eastern corner of Lot 1 located at the southeasternmost point of the Pickerel Point plat. Defendants also maintain that the legal description of Parcel B, as contained in the deeds in their chain of title going back to Roy and Elizabeth Tilman, specifically included this unplatted strip of land within the boundaries of Parcel B and that this strip of land could be conveyed by a metes-and-bounds description because it was

_____

[1] Roy appears to be Lillian's son. However, it is not clear which spelling of the family's last name is correct. We have used the spelling employed by the record documents pertaining to each individual. Thus, to the extent there are spelling discrepancies in this opinion, these are the result of spelling discrepancies existing in the record documents.

never part of Lot 1 as Lot 1 was platted. Accordingly, defendants argue that Parcel B is lakefront property.

Plaintiffs, on the other hand, claim that the disputed strip of land is part of Lot 1 as depicted on the plat because the straight line on the northeast side of Lot 1 merely indicates the meander line of Chippewa Lake, not the boundary line of Lot 1. Plaintiffs further note that the plat does not indicate any use or reservation for any land between the platted lots closest to the lake and the shoreline. As such, plaintiffs contend that because no contrary intention was expressed in the plat, Chippewa Lake constitutes the actual boundary of Lot 1. Plaintiffs further maintain that because the disputed strip of land was part of Lot 1, the disputed strip could not be split from Lot 1 through a deed utilizing only a metes-and-bounds description encompassing the strip and without specifically referring to the Pickerel Point plat encompassing Lot 1. Plaintiffs argue that, with the exception of an easement for purposes of ingress and egress, there is nothing within their chain of title indicating that any portion of Lot 1 was separately conveyed to be attached to a different parcel.

The trial court concluded that Lot 1 extended to Chippewa Lake and quieted title to the disputed strip of land in plaintiffs' favor, granting plaintiffs' motion for summary disposition under MCR 2.116(C)(10) and denying defendants' motion for reconsideration. Specifically, the trial court held that despite the existence of monuments creating a line before the shoreline and the line drawn on the plat in accordance with those monuments, Lot 1 nonetheless extended to the water's edge. The trial court noted that at the time Pickerel Point was platted, there was no statutory requirement for plats to affirmatively state that lots next to water extended to the water's edge but that plattors were statutorily required to designate sections on the plat with drawn lines and to place permanent monuments defining the boundaries of the plat. The trial court reasoned that as a practical matter, these monuments could not be placed in the water. Additionally, the trial court cited caselaw from the era holding that lots next to the shoreline were presumed to run to the water's edge unless the plattor expressly reserved rights to shoreline land in front of the lots. The trial court further explained that there was no evidence that the plattors in this case reserved any rights to any land between Lot 1 and the shoreline when Pickerel Point was platted. The trial court also concluded that because the disputed property was part of Lot 1 pursuant to the Pickerel Point plat, the attempt to convey ownership of the disputed property in 1991 by way of a metes-and-bounds description without referencing the plat was invalid under MCL 560.255.

Defendants now appeal.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision regarding a summary disposition motion. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). Summary disposition may be granted pursuant to MCR 2.116(C)(10) if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id*. at 415.

"Equitable rulings to quiet title, as well as questions of law in general, are reviewed de novo." *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008) (quotation marks and citation omitted). In ascertaining the meaning of a plat dedication, "[t]he intent of the plattors must be determined from the language they used and the surrounding circumstances." *Thies v*

*Howland*, 424 Mich 282, 293; 380 NW2d 463 (1985); see also *Wiggins v City of Burton*, 291 Mich App 532, 550, 552; 805 NW2d 517 (2011) (applying this rule in the context of a motion for summary disposition).

## III. ANALYSIS

This appeal presents two distinct but interrelated issues. First, we must determine whether the trial court erred by concluding that Lot 1, as it was created in the Pickerel Point plat, extended to Chippewa Lake such that the lake provided the northeastern boundary of Lot 1 and that the disputed property was encompassed within the boundaries of Lot 1. Second, we must determine whether the trial court erred by concluding that the 1991 conveyance of ownership over the disputed property was invalid under MCL 560.255 because the disputed property was defined by metes and bounds without reference to Lot 1 of the Pickerel Point plat. We address each of these issues in turn.

## A. WHETHER LOT 1 EXTENDS TO CHIPPEWA LAKE

Resolution of this first issue depends on the meaning of the straight line that is depicted on the Pickerel Point plat, and also described by metes and bounds thereon, which runs along the northeast side of Lot 1 and southwest of the Chippewa Lake shoreline.

Pickerel Point was platted in 1927. In construing the meaning of a plat, we look to the statutes regarding plats that were in effect at the time that the plat was recorded. See *2000 Baum Family Trust v Babel*, 488 Mich 136, 158; 793 NW2d 633 (2010). Pertinent to the issues presented in this case, 1915 CL 3350, as amended by 1925 PA 360, required as follows:

> Whenever any city, village or addition thereto shall be laid out or platted as hereinafter provided, or whenever any land shall be platted into lots or blocks, within this state, the proprietor or proprietors thereof shall cause a survey and three true maps or plats thereof to be made by a registered civil engineer or surveyor . . . . There shall be written or printed upon the paper on which said maps or plats shall be made a full and detailed description of the land embraced in said maps or plats, showing the township and range in which such land is situated and the sections and parts of sections platted, containing the name of the town, city, village or addition platted, the name or names of the owners and parties required to sign said plat thereof, and of the engineer or surveyor making said maps or plats, with the date . . . . The sections and parts of sections platted shall also be designated by lines drawn upon such map or plat, with appropriate letters and figures, and in case of a sub-division of lots or blocks of a previous survey, the outlines shall be designated by lines upon said map or plat, and shall be marked with appropriate letters and figures in ink of a different color than that in which the plat is drawn . . . .

Additionally, 1915 CL 3351, as amended by 1925 PA 360, provided in relevant part:

> Such maps or plats shall particularly set forth and describe such portion of the government survey as is intended to be platted, and when said premises are not included in the legal subdivisions of the government surveys then the boundaries

to be defined by metes and bounds and courses. Said maps or plats shall also particularly set forth and describe all the public grounds, except for streets and alleys, by their boundaries, courses and extent, and all streets and alleys by their courses, lengths, widths, names or numbers, by writing or figures upon that portion of the map or plat intended for those uses, and all roads or streets, which are not dedicated to public use, shown in said plat shall be marked "private roads." And all the lots intended for sale shall be numbered, either by progressive numbers, or, if in blocks, progressively numbered or lettered . . . . Permanent metal monuments of not less than one-half inch in diameter and fifteen inches in length shall be located in the ground at all angles in the boundaries of the land platted, and at all the intersections of streets, intersections of alleys, or of streets and alleys, and at the intersections of streets and alleys with the boundaries of the plat, as shown on the map or plat, and when there are permanent objects in the vicinity of such monuments, the bearings and distances of such objects shall be noted . . . .

In this case, defendants argue that because the Pickerel Point plat contains no language affirmatively indicating that Lot 1, or the lots closest to the lakeshore generally, extend to the water's edge, Lot 1 is bounded on the northeast side by the straight line running southwest of the shoreline that is drawn and described by metes and bounds on the plat. However, defendants have not cited any statute in existence at the time the Pickerel Point plat was created that requires such a statement to appear on plats. We find no such statute in existence at the time the Pickerel Point was plated. Instead, a review of caselaw from the era involving similar factual circumstances reveals that the general practice was for surveyors to demarcate a meander line roughly approximating the shoreline for purposes of generally showing the size of the lots with the understanding that these lots were actually bounded by the body of water rather than the meander line unless the plattor expressed a contrary intention.

For example, in *Watson v Peters*, 26 Mich 508, 514-515 (1873), the plaintiff advanced a similar argument as advanced by defendants. The plaintiff in *Watson* claimed ownership of a piece of land in the nature of an island or sandbar that was located between the main channel of the river and the lots owned by defendant that bordered the river. *Id*. at 510-511, 518. The Supreme Court noted that the evidence in the record reflected that a "middle ground" in front of the lots owned by the defendant was depicted in the original plat "without particularly designating its nature, or showing any definite purpose of the proprietors in respect thereto." *Id*. at 510. The plaintiff argued that the boundaries of the lots in the plat that were owned by the defendant were defined by the distinct lines indicated on the plat and that the lots only included the land within those boundaries. *Id*. at 514. Accordingly, the plaintiff maintained that these lots were not bounded by the river and that the defendant had not been conveyed the land under the water to the center of the river. *Id*. at 514-515.

Our Supreme Court, however, concluded that "the defendant must be held proprietor to the middle of the main channel, unless the plat clearly overcomes and excludes the presumption of the common law which would make him such." *Id*. at 516. The Court reasoned as follows:

The owner of city lots bounded on navigable streams, like the owner of any other lands thus bounded, may limit his conveyance thereof within specific limits, if he shall so choose, *but when he conveys with the water as a boundary, it will never be*

-5-

*presumed that he reserves to himself proprietary rights in front of the land conveyed*, which he may grant to others for private occupation, or so occupy himself as to cut off his grantee from the privileges and conveniences which appertain to the shore of navigable water. Such privileges and conveniences constitute a part, and in many cases the principal part, of the value of the grant; and it is precisely in these cases of city lots that they are of most value, and generally constitute the chief inducement to the purchase; and the chief, or at least a very important element, in determining the price. These cases, therefore, of all others, are those in which the reason of the rule which infers an intent to convey the land under the water, is most apparent and forcible. *And the rule itself is too valuable, and too important, to be varied by so immaterial a circumstance as that the boundary on the water is defined by a line, instead of by making use of words which to the common understanding would convey the same meaning*. And what we have said of navigable waters, is equally applicable to all natural water courses. *If, on the face of the plat, by reference to which the defendant bought, there was any thing which distinctly indicated an intent on the part of the proprietors to make this case exceptional, and to reserve to themselves any rights in front of the water lots marked on it, after they should have been sold, the case would be different*. [*Id*. at 517-518 (emphasis added).]

Our Supreme Court also addressed a similar issue in *Turner v Holland*, 65 Mich 453; 33 NW 283 (1887). The lots involved in that case were owned by the complainants and were bordered by a road on the east side and a "bayou" on the west side. *Id*. at 454-455, 457, 462. The bayou was separated from the main channel of the river by a distinct strip of land on which other lots had been platted that were not at issue in the case. *Id*. at 454-457, 459. The complainants claimed that the bayou formed the western boundary of their lots and that they owned the land under the bayou to its center. *Id*. at 455.

The defendants in *Turner*, advancing an argument similar to that made by the plaintiffs in *Watson*, contended that the original plattor had retained ownership of the land under the bayou and that the plat did not indicate that the bayou formed the western boundary of the lots at issue because the depictions of the lots on the plat and the accompanying precise measurements of each lot westward from the street that formed the eastern boundary line evidenced the intent to form a fixed western boundary line that was, at most, merely close to the water's edge. *Id*. at 457-458, 462. The defendants further argued, similarly to defendants in the instant case, that the above circumstances coupled with the lack of a dedication specifically referencing the bayou demonstrated "an intent to restrict the lots to the dimensions given on the plat, and to retain the bayou for [the plattor's] own use." *Id*. at 462.

The *Turner* Court explained that "the only question is whether the proprietor in this instance did, by the plat which he made, and according to which he sold the lots to the complainants, bound such lots by the bayou as the western line of the lots." *Id*. The Court concluded that the bayou was the western boundary of the lots at issue and that those lot owners had riparian rights, reasoning in pertinent part as follows:

> I do not see anything upon the face of this plat, or in the language of the dedication, which indicates an intention of reserving the bayou as private property,

or restricting purchasers of lots to the margin of the water. *The fact that the length of the lines of the lots bordering on the bayou are given in feet, and decimals of a foot, does not indicate an intention to limit the lot to the length of the line specified.* We must apply to this dedication by plat the same rules of construction that we would in conveyances from one individual to another; and *the rule is well established that courses and distances must give way to natural boundaries. Here the natural boundary is laid down upon the plat, and is marked "Bayou."* The lots as platted run from Washington street to the bayou, and from the bayou to the Saginaw river, following the course and sinuosities of the water's edge for their west and east boundaries. [*Id.* at 463-464 (emphasis added).]

In accordance with these principles, we conclude that survey lines marked near bodies of water that fail to follow all of the irregularities of the shoreline generally do not define the boundaries of a waterfront lot because "[i]t has been decided again and again that the meander line is not a boundary, but that the body of water whose margin is meandered is the true boundary." *Porter v Selleck*, 236 Mich 655, 661; 211 NW 261 (1926) (quotation marks and citation omitted). In *Porter*, the lot at issue was bounded on the north and east by Goose Lake and included a peninsula protruding from the northeast portion of the lot into the lake. *Id.* at 656. The ownership of the lot was traceable to a grant from the federal government in 1864. *Id.* As it turned out, the meander line as run around Goose Lake by the original government survey filed with General Land Office actually cut across part of the peninsula. *Id.* at 656-658. In a quiet title action involving a dispute over the land on the tip of the peninsula north of the meander line, our Supreme Court concluded that title to the disputed property passed along with the original conveyance of the lot that included the origin of the peninsula. *Id.* at 660. The Court reasoned:

> The meander line cut off most of the peninsula, leaving it outside the meander. The survey treated it as water, nonexistent as land, but as a part of the lake. By the survey, lot 13 is bounded on at least two sides by the lake, not by the meander. [*Id.*]

In the present case, the Pickerel Point plat gives no indication that Charles and Lillian Tillman intended to reserve any portion of land between Lot 1 and Chippewa Lake. There is no language of reservation, and there are no symbols or other markings along the shoreline that support such an interpretation. Additionally, there is no indication from the record that Charles and Lillian Tillman used, or asserted a claim over, land between the lots and Chippewa Lake. Defendants do not assert otherwise. The plat included a metes-and-bound description of the platted land, lines and measurements depicting the lots, and an indication that monuments had been placed at boundaries and angles of the platted land, all of which were required by 1915 CL 3350-3351, as amended by 1925 PA 360. However, because the original plattors did not express an intention to reserve any portion of land between Lot 1 and the water, the natural boundary of Chippewa Lake controls and Lot 1 as platted extends to the lake. *Watson*, 26 Mich at 516-518; *Turner*, 65 Mich at 463-464; *Porter*, 236 Mich at 660-661. Accordingly, defendants are not entitled to relief on this issue.

## B. THE 1991 CONVEYANCE

Defendants next argue that the metes-and-bounds description in the 1991 conveyance of Parcel B encompassed the disputed property and thus transferred the disputed property to defendants' predecessors-in-interest. Hence, defendants contend that they were conveyed the disputed property by way of the same metes-and-bounds description that included the disputed property.

MCL 560.255, which is located within the Land Division Act, MCL 560.101 *et seq.*, provides: "When a subdivision plat has been recorded, the lots in that plat *shall be described by the caption of the plat and the lot number for all purposes*, including those of assessment, taxation, sale *and conveyance*." (Emphasis added.) As this Court has previously explained, when applying this statute, the term "shall" signifies "mandatory, rather than discretionary, action," and therefore, "MCL 560.255 requires that a lot in a platted parcel of land be identified in all transactions *by referring to the plat, and not by a metes-and-bounds description.*" *Tomecek v Bavas*, 276 Mich App 252, 262; 740 NW2d 323 (2007), aff'd in part and rev'd and vacated in part on other grounds by 482 Mich 484 (2008) (quotation marks and citation omitted; emphasis added). This Court further explained in *Tomecek*:

> Because all transactions involving the platted lot (including sales and conveyances of the lot) *shall* be described by reference to the plat caption and lot number, the description found in the plat of the lot and of the property rights associated with the lot acts as the "official" description of the lot. Accordingly, changes to the metes-and-bounds description of the lot or to the rights associated with the lot must be made by changing the plat. [*Id.* at 263.]

A deed that contains an incorrect description of portions of the conveyed property is not entirely void so long as the rest of the property's description "points out with sufficient certainty the premises to be conveyed." *Tuthill v Katz*, 163 Mich 618, 625; 128 NW 757 (1910). In such cases, the incorrectly described portion will be excluded from the deed, and the remainder of the deed remains valid. *Id.* at 625-626. However, the remaining description must still be sufficient to describe the premises. See *Hicks v Finbarg*, 189 Mich 332, 338; 155 NW 359 (1915) ("False and impossible parts of descriptions in conveyances may be rejected, where, by doing so, a good description remains.").

Here, as the trial court correctly held, Lot 1 was part of the Pickerel Point plat that was recorded in 1927, and Lot 1 extended to Chippewa Lake. Accordingly, under MCL 560.255, any attempt to convey Lot 1—or a portion of Lot 1—was required to employ a description referencing the caption of the Pickerel Point plat and the lot number. However, the 1991 conveyance did not describe the plat and Lot 1 with respect to the property that was the subject of the grant. To the extent that the 1991 deed purported to convey ownership of the disputed property that was encompassed within Lot 1, it did so only by way of a metes-and-bounds description. As previously stated, the parcel constituting Lot 1 could not be altered by conveying a portion of Lot 1 solely by way of a metes-and-bounds description. *Tomecek*, 276 Mich App at 262-263. Further, to the

-8-

extent the plat and Lot 1 were mentioned in this deed, the reference was made *only* with respect to the easement across a portion of Lot 1 that is not at issue in the instant appeal.[2]

Hence, the 1991 conveyance did not properly convey ownership of the disputed property or split the disputed property from Lot 1. MCL 560.255; *Tomecek*, 276 Mich App at 262-263. Because the disputed property could not be conveyed in this manner, the 1991 deed was void to the extent that it purported to convey the disputed property as part of Parcel B. *Tuthill*, 163 Mich at 625-626; *Hicks*, 189 Mich at 338. Because the disputed property was never part of Parcel B, defendants never acquired ownership of the disputed property through the conveyances in their chain of title stemming from the 1991 conveyance.

Accordingly, we concur with the trial court that there was no genuine issue of material fact that Lot 1 extended to Chippewa Lake and that title to the disputed portion of Lot 1 never passed to defendants as owners of Parcel B. Plaintiffs were entitled to judgment as a matter of law, and the trial court did not err by granting summary disposition in plaintiffs' favor. See *Dextrom*, 287 Mich App at 415.

Affirmed. No costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan

---

[2] Although we recognize that the Plat and Lot 1 were referenced in the creation of the easement over the southeasterly 19 feet of Lot 1, we do not agree with defendants that this met the statutory requirements. The easement language came *after* the description of the property, which indicates that the reference to the Plat and Lot 1 applied *only* to the easement and not the conveyance of ownership of the disputed property.